UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DANIEL J. MUNIZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § NO. 3:07-CV-0424-K |
| | § |
| MICHAEL J. ASTRUE, | § |
| Commissioner of Social Security, | § |
| | § |
| Defendant. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on March 7, 2007. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On June 23, 2004, plaintiff Daniel Muniz (hereinafter "Plaintiff") filed an application for a period of disability and disability insurance benefits, claiming disability due to Complex Regional Pain Syndrome ("CRPS"). (Administrative Record (hereinafter "Tr.") at 14, 52). Plaintiff alleged a disability onset date of May 28, 2003. (Tr. at 14, 52).

The Administrative Law Judge ("ALJ") conducted a hearing on April 18, 2006. (Tr. at 207-228). On June 7, 2006, the ALJ denied Plaintiff's request for benefits, finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 14-20).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on January 12, 2007, the Appeals Council denied his request. (Tr. at 4). Therefore, the ALJ's

decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed his federal complaint on March 7, 2007. Defendant filed an answer on April 23, 2007. On June 22, 2007, Plaintiff filed a brief, followed by Defendant's brief on August 20, 2007 and Plaintiff's reply brief on September 4, 2007.

<u>Standard of Review - Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

<u>Discussion</u>: To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he or she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Substantial gainful activity is defined

as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).
"A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ proceeded to step five, finding that there are jobs that exist in significant numbers in the national economy that the claimant can perform, relying on the Medical-Vocational Rules and the testimony of a vocational expert. (Tr. at 19). He, therefore, denied Plaintiff's request for benefits. (Tr. at 20).

Plaintiff was diagnosed with Complex Regional Pain Syndrome ("CRPS") on January 8, 2004, following a work-related injury during which he fell from a ladder and injured his right foot and ankle. (Tr. at 122-25). CRPS, also referred to as Reflex Sympathetic Dystrophy ("RSD") is a rare disorder of the sympathetic nervous system that is characterized by chronic,

severe pain.¹ Diagnosis is made based on the presence of complaints of pain associated with other physical findings, such as swelling of the affected extremity, changes in skin color or temperature, and abnormal hair or nail growth. Social Security Administration Ruling 03-02 ("SSR 03-02"), "Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome," notes that "[i]t is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." ²

Plaintiff's medical records reveal that he injured his right foot when he fell from a ladder at work on May 28, 2003. (Tr. at 104). He was originally seen by Dr. Baxter Greer who did X-rays, fitted Plaintiff with an orthopedic boot, and referred him to Dr. Kenneth Bayles, an orthopaedic surgeon. (Tr. at 98-103). On June 3, 2003, Dr. Bayles diagnosed Plaintiff with an internal derangement right foot, right ankle and right lateral collateral ligament strain. (Tr. at 105). Dr. Bayles ordered X-rays of Plaintiff's right foot, noted that the Plaintiff was unable to work at that time and recommended a bone scan and/or MRI scan of the right foot and ankle "because of the significant pain [Plaintiff was] experiencing." (Tr. at 105).

Dr. Benjamin Cunningham treated Plaintiff from July 11, 2003 through October 1, 2003. (Tr. at 110-117). In his October 1, 2003 chart note, Dr. Cunningham states that "I anticipated that he would be healed at this point. He is still having a significant amount of pain and I am at a loss as to why this is occurring. The possibilities include ligamentous disruption or possible RSD or some other affliction of the foot that is causing hyperesthesia and sensitivity and pain

---

¹ http://www.webmd.com/brain/reflex-sympathetic-dystrophy-syndrome

²"The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJs' decisions." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citations omitted).

circumferentially." (Tr. at 110). Dr. Cunningham referred Plaintiff to Dr. Lonnie Schwartz, a foot specialist, for a second opinion.

Orthopaedic surgeon Dr. Arthur Sarris examined Plaintiff on January 8, 2004. (Tr. at 122). Dr. Sarris noted that Plaintiff "continues to have lots of pain and intermittent swelling in the right ankle and foot" and concluded that "[c]linical evaluation along with the bone scan of 1-6-04 [are] consistent with the diagnoses of a complex regional pain syndrome I, (RSD)." (Tr. at 123). Dr. Sarris further wrote that:

> This probably is one of the most difficult problems to deal with. They are somewhat difficult to explain to ourselves, and particularly to the patient, and other health medical providers. What has happened here is that he has developed a "short circuit" between the regular and sympathetic nervous system and pain, circulation and function is impaired by this overlapping of two nervous system[s].* * * Sometimes it is necessary to have psychological help in order to handle this type of problem, but the suggestion of this is usually met with resistance because the patient and the health provider interpret this as being an expression that this is in all [sic] "his head", and this [is] not so. This is a real and definite entity.

(Tr. at 124).

Plaintiff was treated by Dr. Lonnie Schwartz, a podiatrist. (Tr. at 126-131). His notes on January 23, 2004 report that Plaintiff complained of "constant pain in his ankle and stiff toes that he cannot move" but decreased pain with his cast boot. (Tr. at 131). Dr. Schwartz diagnosed Plaintiff as having an ankle injury/sprain, sinus tarsi syndrome, and RSD. He referred Plaintiff to pain management for injection therapy to treat his RSD. (Tr. at 131). Dr. Schwartz fitted Plaintiff with a foot brace on February 24, 2004. (Tr. at 130). On February 26, 2004, Dr. Manuel Ramirez performed a nerve block. (Tr. at 133). On March 9, 2004, Plaintiff again reported to Dr. Schwartz for right ankle pain and swelling, reporting that Plaintiff "wasn't sure

5

[the nerve block] helped much." (Tr. at 129). Dr. Schwartz recommended that Plaintiff should continue with the cast boot and pain management for injection therapy to treat RSD. (Tr. at 129). On April 19, 2004, Dr. Schwartz again treated Plaintiff, recommending that a Bone Stimulator Unit is indicated because the injury has lasted more than a year and noting that "[t]he delayed healing will be improved as well as the symptoms from the Chronic Regional Pain Syndrome." (Tr. at 128). On May 6, 2004, Dr. Schwartz saw Plaintiff for "follow-up of severe pain" and again recommended a Bone Stimulator Unit, as well as radiofrequency and pain management counseling. (Tr. at 126).

Dr. Jeffrey Kalina examined Plaintiff on May 3, 2004 and September 17, 2004 for a designated doctor evaluation at the request of the Texas Workers Compensation Commission. In the May 3, 2004 report, Dr. Kalina noted that Plaintiff complained of pain in his right hip, right knee, right ankle and right foot and rated his pain at 10 on a scale of 1 to 10 and at 8 at the least. (Tr. at 155). Plaintiff reported consistent pain and that sitting, standing, walking, sleeping, pushing, pulling, stopping, bending, sexual activity and weather changes made his pain worse and that rest and elevating his foot reduced his pain. After reviewing the various scans, MRIs and X-rays of Plaintiff's right foot and performing a physical examination of Plaintiff, Dr. Kalina opined that although he had not reached maximum medical improvement at the time, he would be able to return to work with restrictions. (Tr. at 156). He noted that Plaintiff "has RSD of the right foot and is a candidate and needs a rhizotomy or procedure aimed at resolving the RSD. He has failed injection therapy. The examinee should be re-evaluated at the conclusion of treatment." (Tr. at 156). Dr. Kalina again examined Plaintiff on September 17, 2004. Following the May appointment, Dr. Kalina had received and reviewed medical records from Dr. Manuel

6

Ramirez, discussed below, for lumbar sympathetic block injections Plaintiff received, as well as a radiofrequency neurolysis procedure aimed at reducing Plaintiff's pain. (Tr. at 147-148). On September 17, Plaintiff complained of pain in his low back radiating to the right leg, as well as pain in the right ankle and right foot/toes. (Tr. at 149). Plaintiff indicated that his pain rated at 10 on a scale of 1 to 10 and rated his pain at 10 at its least and at 10 at its worst. Plaintiff reported consistent pain and that sitting, standing, walking, pushing, pulling, stooping, bending and sexual activity make his pain worse. He said that rest, elevating his right foot and medication reduced his pain. After examining the Plaintiff, Dr. Kalina concluded that Plaintiff was unable to return to work in any capacity. (Tr. at 150). Dr. Kalina concluded that Plaintiff "has RSD and has continued pain despite sympathectomy. I agree with Dr. Schwartz that he may benefit from a bone stimulator or surgical bone implant, as much of his pain may be for non-fused fracture in the foot. He is in need of pain management and possibly a pain pump. The examinee should be re-evaluated at the conclusion of treatment." (Tr. at 151).

Dr. Fernando Mallou with North Texas Pain Management examined Plaintiff on November 15, 2004. (Tr. at 158-160). Plaintiff presented with right foot, right ankle, and lumbar spine pain, with a pain rating consistently at 10 on the visual analog scale. (Tr. at 158). Dr. Mallou concluded that Plaintiff should follow a chronic pain management program and that "[t]he patient does have significant findings of depression and psychologic component to his injury, as well as a continuation of pain, weakness and overall deconditioning. At this point in time, a chronic pain management program to help reduce the need for medications is also recommended." (Tr. at 160).

The surgical records from Dr. Manuel Ramirez with the Center for Pain Relief indicate

numerous surgical procedures in an attempt to alleviate Plaintiff's chronic pain. On February 26, 2004, March 25, 2004, April 15, 2004, April 22, 2004, and April 29, 2004, Dr. Ramirez performed right lumbar sympathetic blocks at L3 and L4. (Tr. at 134-138). On May 27, 2004, Plaintiff had radiofrequency neurolysis in his right L3 and L4 sympathetic nerves. (Tr. at 132). Plaintiff also had a spinal cord stimulator implanted at some point in 2005. (Tr. at 181). On September 22, 2005, Dr. Ramirez inserted an epidural catheter with morphine, which significantly reduced Plaintiff's pain, as a trial for a morphine pump. (Tr. at 183). Dr. Ramirez removed the catheter on the next day, noting that Plaintiff is a good candidate for an implant of a morphine pump. (Tr. at 183-185). It appears that Plaintiff's insurance carrier disputed Plaintiff's CRPS diagnosis and refused to pay for a morphine pump. (Tr. at 187).[3]

Dr. Ramirez's progress notes from 2004 through 2006 reflect Plaintiff's consistent, intractable pain due to CRPS, as well as the side effects of Plaintiff's use of narcotics Oxycontin and Hydrocodone for pain relief. On November 8, 2004, Dr. Ramirez noted that Plaintiff continued to have pain "in spite of all the measures done so far." (Tr. at 182). On February 17, 2005, Plaintiff reported a 30% decrease in pain from the stimulator but continued to take pain medication 4 to 5 times a day. (Tr. at 181).[4] On March 2, 2005, Plaintiff reported that he was still having pain, although it had improved with the stimulator. (Tr. at 181). Plaintiff reported that he was taking pain medication 6 times a day, but was taking it 8 to 10 times per day before the implant. (Tr. at 181). On June 6, 2005, Plaintiff reported that he continued to have pain despite the presence of an electronic bone stimulator covering the area of his pain. (Tr. at 179).

---

[3] Plaintiff testified at the hearing that he has not been able to have the morphine pump implanted because his insurer has not approved the procedure. (Tr. at 214).

[4] Plaintiff had a spinal cord stimulator implanted at some time prior to February 17, 2005. *See also* tr. at 167.

8

Plaintiff reported that he was having problems concentrating and some drowsiness with the Oxycontin, although it helped the pain. On January 30, 2006, Dr. Ramirez saw Plaintiff for follow-up, noting that Plaintiff suffered "chronic intractable pain" and that "he has a spinal cord stimulator that has been helping his pain, but he still requires narcotic pain medication which unfortunately has been giving hi[m] side effects such as somnolence and forgetfulness." (Tr. at 189). Dr. Ramirez noted that Plaintiff's "pain is quite disabling requiring pain medication" and ranking an 8-9 out of 10 on a VAS pain scale. (Tr. at 190). He noted that the stimulator "is helping some but not taking away the majority of his pain" and that the oral narcotics were making Plaintiff tired and drowsy and causing some forgetfulness. (Tr. at 190).

Dr. Greer referred Plaintiff to the North Texas Rehabilitation Center for a physical performance evaluation on March 9, 2005. (Tr. at 167-178). This physical examination tested Plaintiff's ability to perform a variety of work related functions. The report indicates that the following activities were not considered safe due to Plaintiff experiencing pain and tenderness while performing the activity: walking, sitting, standing, stooping, crouching, kneeling, crawling, balancing and squatting. (Tr. at 170).

Plaintiff testified at the hearing about his typical daily activities. (Tr. at 215). He testified that he gets out of bed in the morning to use the restroom and take a shower. Right after his shower, he returns to bed and props up his foot. Plaintiff only gets out of bed to use the restroom. He has a television in his bedroom that he watches. He testified that he also has a Play Station II but is unable to play with it anymore as he cannot concentrate because of the Oxycontin he is taking. He testified that he also takes sleeping medication to help him sleep. Plaintiff testified that the only time he leaves his home is for doctor's appointments or occasional

trips to Wal-Mart with his wife. He testified that if he goes to Wal-Mart, he must be in a wheelchair in the store and can only stay for 30 to 45 minutes.

Tammie Donaldson testified as a vocational expert (VE) at the hearing. In response to hypothetical questions posed by the ALJ, she testified that a person restricted to a light level of exertion could perform two of the jobs from Plaintiff's past work experience (Tr. at 224), but none of his former jobs if restricted to a sedentary level of exertion. (Tr. at 225). However, she identified numerous jobs which were available to persons limited to sedentary work. In response to a final hypothetical posed by the ALJ which mirrored Plaintiff's medical history and medications together with the presence of substantial pain requiring unscheduled work breaks of more than one hour per day, the VE opined that no jobs were available. (Tr. at 226). Plaintiff's attorney asked whether a person who was restricted to sitting for only 30 minutes at a time, and not more than one hour a day could perform specific jobs which the VE identified in answer to prior hypothetical questions, to which she replied that such restrictions would preclude performing such jobs. (Tr. at 227).

Muniz advances three arguments in support of his claim that the Commissioner's decision is not supported by substantial evidence. His claims that the ALJ failed to properly weigh and consider the medical records and the ALJ's assessment of the Plaintiff's testimony are intertwined and may be addressed together.

As summarized above, following Plaintiff's job-related injury during which conservative treatment was expected to have resulted in full recovery, Plaintiff reported continued significant pain. In January 2004, Dr. Sarris found his condition was consistent with CRPS/RSD. When seen later that month, Dr. Schwartz made the same diagnosis as did Dr. Kalina, an examining

physician, and Dr. Schwartz, who treated Muniz from early 2004 to at least October 2005.

Although Reflex Sympathetic Dustrophy/Complex Regional Pain Syndrome (RSD/CRPS) is not a well understood condition, it is recognized by the Social Security Administration as one which can be disabling. *See* SSR 03-02, supra. Despite the consensus of all doctors who were treating or examining physicians, the ALJ's decision makes no mention of this diagnosis except in passing reference to an entry made by Dr. Ramirez in September 2005. (Tr. at 17). In light of the ALJ's finding that "Tests and examinations show that claimant has only <u>minor</u> <u>foot</u> problems limiting his ability to stand and walk . . ." (Tr. at 18) (emphasis added), it is clear that he disregarded the doctors' diagnoses altogether.

Despite the fact that the precipitating cause of CRPS may be minor injury and the fact that the degree of pain is often out of proportion to the severity of the injury, SSR 03-02 clearly recognizes that the condition when appropriately documented and supported can result in a disabling condition.

Aside from rejecting Dr. Kalina's opinion in September 2004 that Plaintiff was unable to work in any capacity, the ALJ failed to evaluate the diagnoses of any of his treating doctors.[5]

In order to be a basis for a favorable finding, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Id.*

---

[5]Notwithstanding the ALJ's finding that Dr. Kalina's "opinion [was] not based on the examinations or tests performed, but based on the subjective allegations of the claimant" (Tr. at 17), the doctor's report states that the evaluation was made after a careful review of medical records (Tr. at 151), which included the records of sympathetic block injections and surgery on May 27, 2004 (Tr. at 147-148), neither of which are mentioned in the ALJ's summary of the medical records.

However, "an ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain." *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988).

In weighing Muniz's testimony that his pain was disabling, the ALJ found that his "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. at 18). The ALJ further found that while Plaintiff alleged limited daily activities, those allegations would not be considered strong evidence that Plaintiff is disabled. The ALJ based this decision on the fact that Plaintiff's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty" and reasoned that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (Tr. at 18).

There is no basis for the ALJ's observation that Plaintiff presented "weak medical evidence." To the contrary, the opinions of multiple doctors all find that Plaintiff is suffering from CRPS and the medical records, particularly those of Plaintiff's treating physician Dr. Ramirez, which were almost entirely omitted from the ALJ's decision, lend substantial support to Plaintiff's subjective complaints of pain and the swelling and clamminess which Muniz related in his testimony. Plaintiffs' medical records document Plaintiff's consistent complaints of pain, which Plaintiff rated to many of the examining physicians as a 10 out of 10. Importantly, the ALJ failed to consider or even discuss Plaintiff's two years of treatment by Dr.

Ramirez in which he underwent numerous surgical procedures for relief of his chronic pain, none of which reduced his pain below a rating of 8 on a scale of 10 or eliminated his need for narcotic pain medication frequently throughout the day.

In addition, the ALJ failed to consider the factors cited in Social Security Ruling 96-7p for use when assessing the credibility of an individual's testimony and subjective complaints of pain. The seven factors are:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also* 20 C.F.R. § 404.1529 (listing same factors). The ALJ considered only Plaintiff's daily activities and failed to consider any other factors in assessing the credibility of Plaintiff's complaints. In addition to disregarding Dr. Ramirez's medical records, which reflected Plaintiff's numerous surgical procedures and frequent use of narcotics for pain relief, the ALJ failed to consider the well documented side effects of those narcotics, as well as evidence in the medical record that Plaintiff's pain increased due to any activity other than

remaining in bed. While the ALJ's finding as to Plaintiff's credibility is entitled to great deference, the ALJ must consider the objective medical evidence and factors other than Plaintiff's daily activities in assessing Plaintiff's credibility. The very nature of Plaintiff's impairment of CRPS, a syndrome in which the pain experienced by individuals suffering from this impairment is typically out of proportion to the severity of any documented physical injury, heightens the need for a complete and thorough credibility assessment. The ALJ's adverse credibility determination is not supported by substantial evidence. On remand, the ALJ should consider all relevant factors and medical evidence in assessing the credibility of Plaintiff's testimony.[6]

---

[6]Plaintiff argues that the ALJ failed to properly consider Plaintiff's non-exertional limitations in his RFC analysis, including Plaintiff's disabling pain, the fact that Plaintiff needs to elevate his leg, the fact that Plaintiff suffers from depression, and the side effects of Plaintiff's prescribed pain medication. However, since the errors discussed above require that Muniz's claim be remanded to the Commissioner for further proceedings, the undersigned does not believe it is necessary to address this argument.

**RECOMMENDATION:**

For the forgoing reasons, it is recommended that the District Court enter its order REVERSING the decision of the Commissioner and REMANDING for additional proceedings consistent with this recommendation. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 5th day of November, 2007.

_____
Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.